IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIE J. ERVIN, JR.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | **2:11-cv-2579-AKK** |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

Plaintiff Willie J. Ervin, Jr. ("Ervin") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). In light of the Administrative Law Judge's ("ALJ") failure to provide sufficiently an explanation of his reasoning based on the objective medical evidence, this court finds that the ALJ's decision - which has become the decision of the Commissioner - is not supported by substantial evidence. Therefore, the court will **REVERSE** and **REMAND** the decision denying benefits to the ALJ for him to reach a disability determination based on

the complete medical record.

## I. Procedural History

Ervin filed his application for Title II disability insurance benefits and Title XVI Supplemental Security Income on May 21, 2007, alleging a disability onset date of August 5, 2006. (R. 74). Ervin alleges that he is unable to work due to "arthritis, gout, no cartilage in knees," and high blood pressure. (R. 79). After the SSA denied his applications on June 28, 2007, (R. 34), Ervin requested a hearing on July 3, 2007, (R. 46), which he received on August 12, 2009, (R. 22). At the time of the hearing, Ervin was 46 years old, (R. 23), had three years of college, (R. 23-24), and past relevant work that included medium and unskilled work as a mail inserter, heavy and unskilled work as a machine tender, and medium and semiskilled work as an industrial truck or forklift operator. (R. 28). Ervin has not engaged in substantial gainful activity since August 5, 2006. (R. 15, 79).

The ALJ denied Ervin's claims on November 4, 2009, (R. 10), which became the final decision of the Commissioner when the Appeals Council refused to grant review on May 17, 2011, (R. 1-5). Ervin then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield

automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Ervin alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> cause the pain alleged, <u>neither requires objective proof of the pain itself</u>. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept

as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV.  The ALJ's Decision

The ALJ initially determined that Ervin had not engaged in substantial gainful activity since his alleged onset date, and therefore met Step One. (R. 15). Next, the ALJ acknowledged that Ervin's severe impairments of degenerative joint disease/osteoarthritis of the knees, diabetes mellitus, and hypertension met Step Two. *Id*. The ALJ then proceeded to the next step and found that Ervin did not satisfy Step Three since he "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." *Id*. Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Ervin

> has the RFC [residual functional capacity] to perform sedentary work [ ] except that he requires a sit and stand option.
> * * * *
> Medical records from Cooper Green Hospital confirm treatment for hypertension, diabetes mellitus, and osteoarthritis of the knees, which is confirmed by x-rays.  However, there is no mention of any complications related to [Ervin's] hypertension or diabetes such as end organ damage, ulcers, or neuropathy.  While [Ervin] underwent a right knee arthroscopy in August 2006, afterwards he was described as stable with an independent gait and mobility, as well as the ability to put pressure on both knees.
> * * * *
> After careful consideration of the evidence, the undersigned finds that

> [Ervin's] medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, [Ervin's] statements concerning intensity, persistence and limiting effects of these symptoms are not entirely credible and would not preclude sedentary work, as described above.  The undersigned is in no way implying that [Ervin] does not experience some limitations due to his impairments.  However, the limitations alleged [ ] that find support within the objective medical record have been accommodated for by the above RFC.  Specifically, [Ervin] never underwent knee replacement surgery and does not seek any ongoing treatment for any condition. [Ervin's] osteoarthritis in the knees with motion issues and edema would render him unable to perform more than seated work with occasional standing as afforded by sedentary work with a sit/stand option.  However, there is nothing in the objective medical record which would support a complete inability to sit, stand, and/or walk.

(R. 16, 17).  In light of Ervin's RFC and exertional limitations, the ALJ held that Ervin was "unable to perform any past relevant work."  (R. 17).  The ALJ then moved on to Step Five where he considered Ervin's age, education, experience, and RFC, and determined that "jobs . . . exist in significant numbers in the national economy that [Ervin] can perform."  (R. 18).  As a result, the ALJ answered Step Five in the negative, and determined that Ervin is not disabled.  (R. 19); *see also McDaniel*, 800 F.2d at 1030.  It is this finding that Ervin challenges.

### V.  Analysis

Ervin contends that the ALJ committed reversible error by failing to (1) comply with Social Security Rulings ("SSR") 96-8p, 83-12, and 96-9p, (2) explain

why Ervin did not qualify for a closed period of disability and ignoring the objective medical evidence, (3) properly develop the record through a medical source opinion, and (4) assign the proper weight to consulting physician Dr. Guy Dewes' opinion. Doc. 8 at 5-8. For the reasons stated below, this court finds that the ALJ's opinion is not supported by substantial evidence and that remand is warranted.

A. *The ALJ's RFC finding*

As it relates to the SSRs, Ervin contends that the ALJ determined his RFC improperly by failing to conduct a "function by function analysis" as required by SSR 96-8p,[2] determine the amount of time Ervin can spend in the sit and stand option as required by SSR 83-12,[3] and utilize SSR 96-9p's[4] guidelines for RFCs

---

[2]SSR 96-8p states that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the function in paragraphs (b), (c), and (d) or 20 C.F.R. 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Relevant here is the physical abilities function in paragraphs (b) of 20 C.F.R. §§ 404.1545 and 416.945, that state that the Commissioner will assess a claimant's physical limitations, i.e., the ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, and crouch, and then determine the claimant's RFC for regular and continuing work activity.

[3]SSR 83-12 provides guidelines for determining a claimant's RFC where the exertional limitations are within a range of work or between ranges of work.

[4]SSR 96-9p provides guidelines when assigning an RFC for less than a full range of sedentary work.

that are less than a full range of sedentary work.[5]  Doc. 8 at 5-6.  In a nutshell, Ervin takes issue with the ALJ's decision regarding Ervin's ability to perform sedentary work with a sit/stand option.  Basically, Ervin contends that the ALJ's decision is contrary to the three SSRs Ervin references.

Based on the court's review of the three SSRs, the court disagrees with Ervin as it relates to his diabetes and hypertension.  Contrary to Ervin's contentions, the ALJ correctly determined that the objective medical evidence failed to reveal complications regarding Ervin's diabetes mellitus and hypertension.  *Id*.  In fact, this court's review of the record revealed limited information regarding Ervin's diabetes diagnosis.  Moreover, as it relates to the hypertension, Ervin was non-complaint with his high blood pressure medicine.  (R. 147).  Significantly, no evidence exists that shows that medication would not control Ervin's hypertension.  *See* R. 131.  Therefore, the ALJ's decision that Ervin's diabetes and hypertension do not preclude him from sedentary work with a sit and stand option is supported by substantial evidence.

However, as to Ervin's knee pain, the court finds that the ALJ's decision is

---

[5]Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

not supported by substantial evidence. As stated earlier in section V., *supra*, the full extent of the ALJ's analysis is that (1) Ervin's "statements concerning the intensity, persistence, and limiting effects of [his symptoms] are not entirely credible and would not preclude sedentary work," (2) the limitations supported by objective medical evidence "were accommodated for by the above RFC," (3) Ervin's osteoarthritis, swelling, and limited range of motion limit him to the RFC the ALJ assigned, (4) the objective medical evidence does not support a "complete inability" to sit, stand, and/or walk, and (5) Ervin failed to undergo knee surgery or continued medical treatment. (R. 16, 17). Unfortunately, the ALJ's RFC and non-disability findings contain no meaningful reference to the medical record and fail to explain sufficiently the ALJ's reasoning for his findings. As a result, this court does not have the benefit of the ALJ's full reasoning making review at this juncture inappropriate. *Lawton v. Comm'r*, 431 F. App'x 830, 832 (11th Cir. 2011) ("[W]e will reverse where the ALJ fails to apply the correct law or to provide us with sufficient reasoning to allow us to determine that the proper legal analysis has been conducted."), citing *Keeton v. Dep't of Health & Human Servs*, 21 F.3d 1064, 1066 (11th Cir. 1994).

      Although the court does not have the benefit of the ALJ's full analysis and thus offers no opinion on whether Ervin is disabled, the court notes that the

medical record contains relevant objective medical evidence regarding Ervin's knee pain and addresses the surgery issue the ALJ relied on, in part, for his decision. Specifically, in chronological order, the evidence shows that on August 15, 2006, a Cooper Green Hospital ("Cooper Green") radiologist reviewed x-rays of Ervin's knees and opined that Ervin had "degenerative joint disease involving the knees." (R. 135). The next day, Cooper Green admitted Ervin for a right knee arthroscopy and discharged Ervin that same day in "stable" condition and as "able to place pressure on both knees." (R. 131).

On September 21, 2006, treating physician Dr. Martin Bohnenkamp ("Bohnenkamp") evaluated Ervin for, among other things, "weakness and pain [in his] knees [and] feet," and frequent gout flare ups. (R. 147). Dr. Bohnenkamp noted that Ervin was following a prescribed drug regimen for his gout and feet and knee pains. *Id*. A month later, on October 13, 2006, Dr. Bohnenkamp evaluated Ervin again and noted no changes in Ervin's drug regimen and that Ervin still suffered from severe knee pain and gout flare ups twice per month. (R. 145). Dr. Bohnenkamp referred Ervin to a rheumatologist and recommended that he return in six to eight weeks. *Id*. On January 18, 2007, Dr. Bohnenkamp examined Ervin again during a routine visit and noted that Ervin was "'doing good' until [two weeks] ago when [Ervin's right] knee became swollen." (R. 144). Dr.

Bohnenkamp again referred Ervin to a rheumatologist. *Id.*

A month later, on February 5, 2007, a rheumatologist at Cooper Green evaluated Ervin for "knee and joint pain" and observed that Ervin's right knee was stiff, warm, swollen, and throbbing. (R. 142). The rheumatologist ordered x-rays, (R. 143), which revealed "fairly prominent" and "more extensive web like" calcifications, "mild spurring with joint space narrowing medially" in the right knee, severe and mild joint spurring in the left knee, prominent osteoarthritis in the right knee and ankle, and "widening of the medial malleolar talar space in the left ankle," (R. 134). Two weeks later, the rheumatologist examined Ervin again and noted that Ervin's knee started throbbing a week earlier and that Ervin had decreased swelling in his ankles. (R. 140). The rheumatologist referred Ervin to an orthopedic surgeon and recommended that Ervin continue his steroid treatment for an additional week and take Tylenol for his arthritis pain. (R. 141).

On March 20, 2007, Ervin received an MRI of his left knee that revealed (1) "severe cartilage loss in the medial joint compartment" and some loss in the lateral joint compartment, (2) "complete degenerative maceration of the medial meniscus; oblique tear posterior horn lateral meniscus," (3) "chronic appearing deficiency/tear of the anterior cruciate ligament," (4) small joint effusion, and (5) small popliteal cyst. (R. 148). Two months later, on May 14, 2007, the

rheumatogist evaluated Ervin again and noted that Ervin suffered from knee pain, that Ervin had good range of motion in his left knee, and that Ervin experienced pain during testing of his right knee's range of motion. (R. 139). The rheumatologist recommended that Ervin continue taking Tylenol and Aleve for his knee and ankle pain and ordered again an orthopedic consultation. *Id*. Later that month, orthopaedic surgeon Dr. James Floyd ("Dr. Floyd") evaluated Ervin's knee pain and noted that Ervin had "significant edema" in his right knee, swelling in his right ankle, and pain that rated a seven on a ten point scale. (R. 137). Significantly, Dr. Floyd opined that Ervin was a "poor surgical risk, potential for post-operative complications [with] wound and rehab[ilitation]. [ ] Needs to be medically optimal with edema."[6] *Id*. The rest of the progress note is illegible.

On June 11, 2007, Dr. Bohnenkamp examined Ervin again and opined that Ervin continued to have knee pain, and that a knee replacement was planned although "there are concerns about wound healing, rehab., [blood pressure] and edema." (R. 136). Ervin's last visit with Dr. Bohnenkamp occurred on July 11, 2007, when Dr. Bohnenkamp noted that Ervin continued to have knee pain. (R. 166).

---

[6]In other words, contrary to the ALJ's finding, Ervin did not have surgery because of the risk of complications and not because he did not need surgery.

Based on this court's review of the medical evidence, the court cannot determine whether the ALJ's opinion that Ervin is not disabled is supported by substantial evidence because the ALJ provided inadequate reasoning and failed to substantiate his finding with specific references to the objective medical record. For example, while the ALJ references the "objective medical record," (R. 17), he does not identify the medical evidence he relied on to conclude that Ervin's knee pain does not render him disabled. Although the court recognizes that it is not charged with reconsidering the facts, the ALJ's opinion must nonetheless sufficiently reflect that the ALJ considered the facts fully. Based on this record, this court cannot ascertain whether substantial evidence supports the ALJ's decision. Therefore, to maintain the integrity of this court's judicial review, remand is warranted for the ALJ to make a RFC finding and disability determination that contains sufficient explanations and is substantiated by the objective medical evidence.

B.   *Dr. Dewes' consultative examination*

Finally, Ervin contends that the ALJ improperly rejected the opinion of consultative examiner Dr. Guy Dewes ("Dr. Dewes"), who on July 15, 2009, performed a physical capacities evaluation and opined that Ervin could sit and stand for one hour in an 8-hour work day, lift 10 pounds, reach, bend, and use

gross and fine manipulation occasionally, but could never push, pull, climb, balance, or stoop. (R. 169). Dr. Dewes diagnosed Ervin with severe osteoarthritis, gouty arthritis, diabetes mellitus, and hypertension. *Id.* Significantly, Dr. Dewes opined that Ervin could not "work at any job eight hours a day, forty hours a week, fifty weeks a year, even if [the job] were of a light or sedentary nature," and that Ervin was "totally and permanently disabled by his arthritic problems." (R. 176). The ALJ gave Dr. Dewes' opinion "little weight" because Dr. Dewes (1) "examined [Ervin] one time," (2) was not a treating physician, (3) based his opinion on Ervin's subjective statements, and (4) was solicited by Ervin's attorney. (R. 17). While these reasons have merit, they overlook that the regulations provide also that the weight given to medical opinions depends also on the supportability and consistency of the medical opinion. 20 C.F.R. § 404.1527(d). In that respect, although it is undisputed that Dr. Dewes was not Ervin's treating physician and evaluated Ervin once at the request of Ervin's lawyer, remand is warranted because the ALJ failed to support fully his decision to assign "little weight" to Dr. Dewes' opinion. On remand, the ALJ should explain whether the medical evidence is consistent or inconsistent

with Dr. Dewes' reasoning for finding Ervin disabled.[7]

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Ervin is not disabled is not based on substantial evidence. Therefore, the Commissioner's final decision is **REVERSED** and **REMANDED** for the ALJ to make a disability determination based on the complete medical record. A separate order in accordance with the memorandum of decision will be entered.

Done the 11th day of June, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[7]Because remand is warranted here, the court declines to consider Ervin's argument that the ALJ failed to develop the record.